UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-MJ-358-HB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMUEL ELLIOTT FREY,

    Defendant.

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION**

## INTRODUCTION

This memorandum is submitted in support of the government's motion for detention of defendant Samuel Elliott Frey ("defendant"). On June 8, 2020, defendant was charged via a criminal complaint alleging that he and three others conspired with each other to commit arson on property used in interstate commerce, in violation of Title 18, United States Code, Section 844(i), all in violation of Title 18, United States Code, Section 371 (Count 1); and further alleging that defendant has attempted to destroy by fire property used and engaged in interstate commerce, in violation of Title 18, United States Code, Section 844(i) (Count 2). The charges concern defendant's alleged conduct on May 28, 2020, at the Great Health and Nutrition store located in a strip mall on 1360 University Avenue West, Saint Paul, Minnesota.

The defendant was arrested by ATF agents pursuant to the June 8, 2020 warrant while the agents were executing a warrant to search defendant's residence

in Brooklyn Park, Minnesota.  On June 9, 2020, the defendant made his initial appearance. The United States Probation Office (USPO) presented a bond report recommending the defendant remain in custody during the pendency of the case against him. The USPO's recommendation was based on their assessment that the defendant represented both a risk of flight and a danger to the community. At that time, the government made an oral motion to detain the defendant.

## Summary of the Argument

The government agrees with USPO's assessment that the defendant presents a serious danger to the community and a significant risk of flight and therefore should remain in custody pending trial. The charges set forth in the complaint trigger a statutory presumption that the defendant be detained – one that, for the reasons described below, the defendant cannot overcome. Even absent the presumption of detention, there is abundant evidence to show that the defendant presents a risk of non-appearance and represents a clear and present danger to the community.

## The Law: Presumptive Detention

Under 18 U.S.C. § 3142(e)(3) there is a rebuttable presumption that the defendant be detained. The rebuttable presumption arises where the Court finds that there is probable cause to believe that the defendant committed an offense listed in 18 U.S.C. § 2332b(g)(5)(B), which has a maximum term of imprisonment of 10 years or more.  See 18 U.S.C. § 3142(e)(3)(C).  18 U.S.C. § 844(i), as alleged in Count 2 of the Criminal Complaint, is listed in § 2332b(g)(5)(B) and carries a maximum term of imprisonment of 20.

As noted in *United States v. Abad*, 350 F. 3d 793, 798 (8th Cir. 2003), the rebuttable presumption places a limited burden of production on the defendant. However, even when the defendant meets his burden, the presumption does not simply disappear:

> The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained before trial.

*Stone*, 608 F. 3d at 945. In other words, the presumption does not disappear once the defendant has produced some rebuttal evidence but continues to be weighed with other factors. *United States v. LaFontaine*, 210 F. 3d 125, 130-31 (2nd Cir. 2000).

The government's motion for detention is based both upon the danger he presents to the community and his risk of flight. Dangerousness to the community is established under a clear and convincing standard, while risk of flight is established by a preponderance of the evidence. 18 U.S.C. § 3142(f); *United States v. Kisling*, 334 F. 3d 734, 735 (8th Cir. 2003). Bail hearings are typically informal affairs, and not a substitute for trial or discovery. Few detention hearings involve live testimony; most proceed on proffers. *United States v. Abuhamra*, 389 F. 3d 309, 321, n. 7 (2nd Cir. 2004).

Title 18 U.S.C. § 3142(g) sets out a non-exhaustive list of factors this Court should consider in deciding whether to release or detain a defendant pending trial. Those factors include (1) the nature and circumstances of the offense(s) charged; (2) the weight of the evidence against the person; (3) the history and characteristics of

the person; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release.

In presenting information about these § 3142(g) factors, the government (as well as the defendant) may proceed by proffer at a detention hearing. *See e.g., United States v. El-Hage*, 213 F. 3d 74, 82 (2nd Cir. 2000) (while the defendant may present his own witnesses and cross examine any witnesses that the government calls, either party may proceed by proffer and the rules of evidence do not apply); *United States v. Smith*, 79 F. 3d 128, 129-10 (D.C. Cir 1996) ("every circuit to have considered the matter has. . . permitted the government to proceed by way of proffer" (citations omitted)). *See also United States v. Femia*, 983 F. 2d 1046, *4 (1st. Cir. 1993) (unpublished); *United States v. Gaviria*, 828 F. 2d 667, 669 (11th. Cir. 1987).

### Proffered Evidence in Support of Government's Motion

As referenced above, 18 U.S.C. § 3142(g) sets out a non-exhaustive list of factors a court should consider in deciding whether to release or detain a defendant pending trial. All of these factors weigh in favor of detention in this case.

Specifically, at the detention hearing in this case, the government intends to proffer additional information and to elicit additional information through the testimony of ATF Special Agent Laura Gulick, including through the introduction of such exhibits and other items, as non-exhaustively summarized below:[1]

---

[1] The government has tendered discovery that it currently possesses to defendant's counsel, which includes the exhibits referenced in this memorandum.

<u>Exhibit 1</u>:  The June 8, 2020 Criminal Complaint (which is included with this Memorandum as Ex. 1) details various evidence as to how defendant allegedly conspired with others and attempted to commit arson within the Great Health and Nutrition store on May 28, 2020, including his lighting of paper and shelves by fire preceded by his spreading of a specific type of bottled sanitizer (which he then placed in his backpack);

<u>Exhibit 2</u>:  Still images of some of the video surveillance footage from the Great Health and Nutrition store on May 28, 2020, which show defendant wearing a green sweatshirt and backpack in which he, among other actions depicted, can be seen apparently lighting a fire;

<u>Exhibit 3</u>:  Images from defendant's Facebook account on May 28, 2020, which show him wearing attire (such as a green sweatshirt and backpack) that appear to be the very same attire defendant wore at the Great Health and Nutrition, as depicted in the still photos in Exhibit 2;

*<u>Mirandized</u> Statements*:  Following their respective encounters with agents throughout the last few days, defendant and three of his co-conspirators have provided statements to law enforcement after being advised of their *Miranda* rights. Each individual (including defendant himself) provided statements acknowledging defendant's conduct with respect to starting (or otherwise attempting to start) a fire at the Great Health and Nutrition store on May 28, 2020;

<u>Exhibit 4</u>:  A handwritten note that defendant submitted from Sherburne Jail (which the government received on June 10, 2020) in which he admitted in, among

other statements, about remorse for "what I have done" concerning "this major mistake" and the "pain I've cost to the owners of the nutrition store."

Recovered Evidence:  As a result of the execution of a search warrant at defendant's residence on June 9, 2020, the government recovered such items from defendant's bedroom as a backpack and green sweatshirt that appear to be the very same attire defendant wore at the Great Health and Nutrition, as depicted in the still photos in Exhibits 2 and 3, as well as a bottle of hand sanitizer within the backpack that is consistent with the bottles from the Great Health and Nutrition store.

In addition to the evidence summarized above, the government will also present additional information bearing on the dangerousness posed by defendant with respect to his conduct over a multi-day period in late May 2020.  A preliminary review of evidence gathered from defendant's electronic devices so far reveals the following types of information about defendant:

- On May 27, 2020 at approximately 10:12 pm, defendant (a Target employee) texts someone stating "I have keys to everything locked" and later "there's over 200,000 in cash at all targets I'll give you 10 bands…We gonna hit this bitch HARD";

- On May 27, 2020 at approximately 11:16 pm, defendant texts someone stating "We're here" and a few minutes later tells her he's at the Target. At approximately 11:41pm, defendant again texts her stating, "Wya… we got iPads";

- On May 28, 2020, at approximately 12:27 am, defendant texts someone stating, "We found the safe...It's open...With Cash";

- On May 28, 2020, at 9:48 pm, defendant texts someone stating, "I stole so much shit from Verizon…and fucking foot locker";

- On May 28, 2020, at 10:12 pm, defendant texts someone stating, "I set fire to a store…it's still going"; and

- On May 29, 2020, at approximately 10:38 pm, defendant texts with co-conspirator CF about bringing crates in from outside with defendant stating he has "fire sticks…echo spots…these amazon displays… we raised [sic] the post office."

*See* Ex. 5 (ATF Report Summarizing Defendant's Data); *see also* Ex. 6 and Ex. 7 (Cellebrite Extraction Reports Detailing defendant's text messages).

In addition to his dangerousness, there is clear evidence of defendant's risk of nonappearance, as USPO has already noted. The concerns are further supported by Ex. 8 (ATF Interview Report with Parents) and Ex. 9 (5/30/2020 Brooklyn Park P.D. Report), which further show that defendant has a history that presents a heightened risk of non-appearance if he were to be released.

CONCLUSION

The charge of arson of a building affecting interstate commerce creates a rebuttable presumption that the defendant be detained pending trial. Beyond that, the evidence supporting the relevant statutory criteria demonstrates that both bases for detention – the risk of flight and his danger to the community – exist in this case. For these reasons, the government respectfully requests that the defendant be detained pending trial in this matter.

Date: June 11, 2020        ERICA H. MACDONALD
United States Attorney


       */s/ Matthew S. Ebert*
BY:   MATTHEW S. EBERT
Assistant United States Attorney