UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-129(1)(NEB/HB)

UNITED STATES OF AMERICA,

        Plaintiff,                       **PLEA AGREEMENT AND**
                                                 **SENTENCING STIPULATIONS**

v.

SAMUEL ELLIOT FREY,

        Defendant.

The United States of America and defendant SAMUEL ELLIOT FREY (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

    1.    **Charges**. The defendant voluntarily agrees to plead guilty to Count Two of the Superseding Indictment, which charges the defendant with knowingly and intentionally conspiring with McKenzy Ann DeGidio Dunn (hereinafter referred to as "Co-Conspirator Dunn") and with Co-Conspirator 1, to damage and destroy, and attempt to damage and destroy, by means of fire, a building used in interstate or foreign commerce and in activity affecting interstate or foreign commerce, in violation of Title 18, United States Code, Section 844(i), all in violation of Title 18, United States Code, Section 371. The defendant fully understands the nature and elements

1

SCANNED
JUL 21 2021 CK
U.S. DISTRICT COURT ST. PAUL

of the crime with which he has been charged. At the time of sentencing, the government agrees to move to dismiss Count One of the Superseding Indictment.

2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count Two of the Superseding Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

On or about May 28, 2020, the defendant and Co-Conspirator Dunn knowingly and intentionally conspired with each other and with Co-Conspirator 1 (collectively, the "co-conspirators") to commit an act of arson at the Great Health and Nutrition store located at 1360 University Avenue West, in St. Paul, Minnesota. The Great Health and Nutrition store is a business engaged in activity affecting interstate or foreign commerce in that the business routinely received products shipped from outside the State of Minnesota. At all times herein, Co-Conspirator 1 was 17 years-old and was the defendant's sister.

More specifically, it was part of the conspiracy that on May 28, 2020, the co-conspirators joined other individuals who had gathered near the 1300 block of University Avenue West, in St. Paul, Minnesota, and thereafter the co-conspirators engaged in conduct designed to accelerate a fire in the Great Health and Nutrition store. The defendant voluntarily and intentionally joined in the conspiracy, and at the time the defendant joined in the conspiracy, he knew that its purpose was to commit an act of arson at the Great Health and Nutrition retail store. While the

2

conspiracy was in effect, the defendant and Co-Conspirator Dunn committed, directly and through at least one other co-conspirator, certain overt acts, in furtherance of the conspiracy and to achieve its objects, including but not limited to the following:

The defendant, Co-Conspirator Dunn, and Co-Conspirator 1 arrived together in the same car to the Midway area near University Avenue in St. Paul, Minnesota, at which time and location other parties were already engaged in, among other things, efforts to trespass, loot, and burn nearby businesses and buildings.

The defendant, Co-Conspirator Dunn, and Co-Conspirator 1 together walked through multiple business locations in St. Paul's Midway area before they arrived together inside the Great Health and Nutrition retail store located at 1360 University Avenue West. While initially inside the Great Health and Nutrition store, the defendant, Co-Conspirator Dunn, and Co-Conspirator 1, among other things, at various times, walked through and observed the interior of the premises.

While the defendant, Co-Conspirator Dunn, and Co-Conspirator 1 stood near each other within the Great Health and Nutrition store, one of the co-conspirators said, "We're lighting this bitch up." Defendant took a bottle of hand sanitizer, removed the cap, and poured the contents onto a downed shelving unit located on the floor.

A co-conspirator stated again that "We're lighting this bitch up, bro." Co-Conspirator 1 and defendant knocked shelving units to the floor as Co-Conspirator 1 said, "We don't got to worry. It'll all be burned."

Standing near the other co-conspirators, the defendant held a lighter in his hand and lit paper on fire. Defendant placed the flaming paper upon the area within the store where he had poured the contents of a hand sanitizer bottle. As the defendant lit the paper on fire standing next to the defendant, one of the conspirators warned others that the defendant was "lighting" and "dropping fire."

Standing near the other co-conspirators, the defendant held a lighter in his hand and lit a magazine on fire as Co-Conspirator 1 said, "don't light this bitch up yet." While holding a magazine in his hand, defendant turned toward a shelving unit that remained standing upright against a wall and said, "you have like five minutes . . . until I can figure out how to get this bitch burned."

Co-Conspirator Dunn took an additional bottle of hand sanitizer from a countertop in her hand and stood next to the defendant. Working together, the defendant and Co-Conspirator Dunn each applied additional hand sanitizer in an effort to accelerate a fire. As the defendant and Co-Conspirator Dunn stood next to each other, a co-conspirator warned that "He lit the fire." After the defendant and Co-Conspirator Dunn together stepped away from the shelving unit and looked toward the store's entryway, they returned back to the shelving unit for the purpose of accelerating a fire.

As a result of the actions of the co-conspirators, the Great Health and Nutrition store sustained damage. More specifically, an ATF Special Agent and Certified Fire Investigator examined the Great Health and Nutrition store and determined, among other things, that along the east interior one of the shelving units sustained fire

4

damage in the form of charring, discoloration, and soot and smoke deposits to the upper two shelves, as well as charred paper on these shelves. The Certified Fire Investigator further observed that the wall behind the shelving unit also sustained fire damage in the form of charring, discoloration, and soot and smoke deposits. The Certified Fire Investigator also observed light smoke deposits on the HVAC air intakes and discharge vents located in the drop ceiling. The ATF Certified Fire determined the fire cause to be the application of an open flame to available combustibles.

After May 28, 2020, the defendant spoke with Co-Conspirator Dunn and with Co-Conspirator 1 each on at least one occasion. In the defendant's respective discussions with the Co-Conspirators, he instructed them to be untruthful to law enforcement by falsely reporting that another person, a male in a Hawaiian shirt wearing a blue baseball hat, had started the fire. At the time of the defendant's instructions to the Co-Conspirators, the defendant knew this was a lie.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.      **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.      **Additional Consequences**. The defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.      **Statutory Penalties**. The defendant understands that Count Two of the Superseding Indictment (Title 18, United States Code, Section 371) is a felony offense that carries the following statutory penalties:

      a.      a maximum of 5 years in prison;

      b.      a supervised release term of not more than 3 years;

      c.      a maximum fine of $250,000;

      d.      restitution; and

      e.      a mandatory special assessment of $100.

7. **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

8. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

    a.    Base Offense Level. The parties agree that the **base offense level is 20**. U.S.S.G. § 2X1.1(a); § 2K1.4(a)(2).

    b.    Specific Offense Characteristics. The parties agree that the following specific offense characteristics apply: (1) pursuant to § 3C1.1, a 2-level upward adjustment applies for obstruction of justice because the defendant instructed at least two others to falsely report to law enforcement that another party was responsible for the offense, which defendant knew at the time was false; (2) pursuant to § 3B1.4, a 2-level upward adjustment

7

       applies for using a minor, namely, Co-Conspirator 1, to commit a crime. The parties agree that no other specific offense characteristics apply. U.S.S.G. § 2X1.1(b)(2).

c.     <u>Chapter 3 Adjustments</u>. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.     <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant move to withdraw his guilty plea after it is entered.

e.     <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he

      will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  f.  <u>Guidelines Range</u>. If the adjusted offense level is 21, and the criminal history category is I, the Sentencing Guidelines range is **37-46 months of imprisonment**.

  g.  <u>Fine Range</u>. If the adjusted offense level is 17, the Sentencing Guidelines fine range is $10,000-$95,000. If the adjusted offense level is 19, the Sentencing Guidelines fine range is $10,000-$100,000. If the adjusted offense level is 21, the Sentencing Guidelines fine range is $15,000-$150,000. U.S.S.G. § 5E1.2(c).

  h.  <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least 1 year up to a maximum supervised release term of 3 years. U.S.S.G. § 5D1.2(a)(2).

9. **<u>Discretion of the Court</u>**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. ~~**Agreements as to Sentencing Recommendation.** The government agrees not to seek a sentence of more than 46 months, and the defendant agrees not to seek a sentence of less than 37 months. If the Court does not accept the sentencing~~

recommendation of the parties, the defendant will have no right to withdraw his guilty plea.  JST 7/20/2021   REF
MLA 7/20/2021

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12. **Restitution**. The defendant understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order the defendant to make restitution to the victim of his crime. There is presently no agreement as to the amount of restitution because the precise amount of restitution is unknown. However, at the time of entry of this Agreement, the parties anticipate that restitution will be in excess of $5,000.

The defendant understands and agrees that the Court will order him to make restitution to any victim of his offense. The defendant further agrees to pay restitution to his victim jointly and severally with Co-Conspirator Dunn, in the amount determined by the Court and as ordered by the Court.

13. **Disclosure of Assets**. The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning,

and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range determined by the district court. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range determined by the district court.

15.     **FOIA Requests**.  The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement**. This is the entire agreement and understanding between the United States and the defendant. Other than this Agreement, the defendant acknowledges that no threats, promises, or representations have caused him to plead guilty. The defendant has read this Agreement and carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts each term and condition of this Agreement.

W. ANDERS FOLK
Acting United States Attorney

Date: 7/20/2021

BY: MATTHEW S. EBERT
JOSEPH S. TEIRAB
Assistant United States Attorney

Date: 7/20/21

SAMUEL ELLIOT FREY
Defendant

Date: 7/20/21

MARCUS L. ALMON
Counsel for Defendant